EDMONDS *v.* DELTA DEMOCRAT PUBLISHING COMPANY

No. 40420 March 11, 1957 93 So. 2d 171

584

*Lee V. Prisock, Lee B. Agnew,* Jackson, for appellant and cross-appellee.

*J. Robertshaw,* Greenville, for appellee and cross- appellant.

GILLESPIE, J.

Plaintiff (appellant here) sued defendant (appellee here) for libel in two counts. Defendant demurred to the declaration and filed therewith a counterclaim in which it was alleged that plaintiff's suit was filed in bad faith and constituted an abuse of the process of the court. Plaintiff then moved to strike the counterclaim. The lower court sustained the demurrer to the declaration and dismissed it. The counterclaim was dismissed on the motion to strike. The plaintiff filed a direct appeal and the defendant a cross-appeal.

## ON DIRECT APPEAL

In count one of the declaration, plaintiff alleged that the defendant was a corporation engaged in publishing a newspeper in Greenville, Mississippi, known as ''The Delta Democrat Times,'' which newspaper had a wide circulation; that plaintiff was an attorney for sixteen years and was Executive Secretary of the United Dry Association of Mississippi; that plaintiff had always enjoyed a good reputation in private and professional life; that on June 16, 1952, defendant prepared, published and distributed an editorial in its newspaper, in the following language, towit:

### ''A Low Blow''

''It has often been true that men convinced of their fellows ignorance of the difference between good and evil are themselves unwilling to make that distinction. This is the case in one instance of the United Drys campaign.

''Henry Edmonds is not a stupid man, nor is the liquor referendum law passed by the legislature an ambiguous

law. On the contrary, the law is quite plain and Mr. Edmonds, one suspects, is quite clever.

"The United Drys executive. director has publicly stated that if the majority of Mississippians vote "Yes" in the August 26 liquor referendum, the state would be entirely wet and it would require an election in each county to make the country dry again.

"Assistant Atty. Gen. Kendall naturally ruled in reply that a majority affirmative vote 'would be mandate to enact legislation permitting each county upon petition of 20 per cent of the qualified electors to vote either for or against the legalization of . . . . liquor in that county.'

"It is all too clear that the United Drys organization, or at least its director,. is determined to keep the state dry—even if it has to confuse the issue. Mr. Edmonds knew, of course, that his distortion of fact would receive wide attention as fact itself and that the attorney general's ruling would be lost on the general public. People, given half a chance, will believe what they want to believe.

"This propaganda trick by the United Drys confirms a growing conviction of ours about pressure groups conducting a 'grass roots' campaign. The term 'grass roots' expresses the absolute determination to gain an end by whatever means."

The plaintiff alleged the editorial contained false and libelous words of and concerning plaintiff and was meant to imply and did falsely imply to those who read it that the plaintiff was a person given to lying without regard to the truth and not to be trusted; that defendant thereby falsely and maliciously, or with reckless disregard of the truth and of plaintiff's rights, did so compose, edit, publish and distribute the aforesaid words which were libelous per se. The plaintiff alleged that he was damaged in that he was humiliated and caused to suffer great mental anguish and was greatly injured in his

good name, fame, and reputation, both individually and as a professional man, and was exposed to public hatred, contempt, and ridicule and degraded in society and lowered him in the confidence of the community.

■ ■ The allegations in the preceding paragraph were conclusions of the pleader, and were not admitted on demurrer. Griffith, Mississippi Chancery Practice, 2nd Ed., Sec. 288; Love v. Fidelity & Deposit Co. of Maryland, 162 Miss. 532, 139 So. 387.

■ ■ The declaration showed that plaintiff occupied a prominent position which was quasi-public in nature and the editorial in question was a comment and criticism of the assertions of plaintiff in regard to a matter of public interest; and the editorial was not, and was not alleged to be, ambiguous. It was not alleged that there was in the editorial any falsity in the statements of fact on which the writer thereof based his criticisms of plaintiff, only that the editorial contained false and libelous words of and concerning plaintiff, which could only be construed to mean that the strictures or criticisms themselves were false and libelous. In this state of the pleading it shows on its face the occasion was conditionally privileged, and it is a question of law whether that privilege was abused. 53 C. J. S., Libel and Slander, par. 178a; Gough v. Tribune-Journal Co. (Idaho), 275 P. 2d 663; Tiernan v. East Shore Newspapers, Inc. (Ill.), 116 N. E. 2d 896; Yancy v. Gillespie (N. C.), 87 S. E. 2d 210; The Charles Parker Co. v. The Silver City Crystal Co. (Conn.), 116 Atl. 2d 440.

■ ■ The right of action given by the law for libel and slander is based on the recognition that the enjoyment of a good reputation is a valuable one accorded to every citizen. The deprivation of this right through falsehood and malice is actionable. But not every stricture is actionable. When a person comes prominently forward in any way and becomes a public or quasi-public figure, he invites free expression of public opinion, in-

cluding criticism. When such criticism is in the form of an opinion, relates to public assertions or acts rather than to the individual in his private affairs, is fair in the sense that the reader can understand the factual basis for the opinions containing the criticism, and the publication relates to a matter of public interest, then the occasion is conditionally privileged; and no action will lie for such publication no matter how severe the criticism or unfavorable the comments, if the privilege is not abused. Newell, Slander and Libel, 4th ed., pp. 543-44; 53 C. J. S., Libel and Slander, par. 130, et seq.; 33 Am. Jur., par. 161; 3 A. L. I., Restatement of the Law of Torts, p. 240; Gough v. Tribune-Journal Co., supra; The Charles Parker Co. v. Silver City Crystal Co., supra; Yancy v. Gillespie, supra. ██ █ The immunity of the doctrine of fair comment applies not only to newspapers but to the public generally. Newell, Slander and Libel, 4th Ed., p. 516. ██ █ The interests of society require that immunity should be granted to the discussion of public affairs and that all acts and matters of a public nature may be freely discussed and published with fitting comments and strictures. 53 C. J. S., par. 131.

██ █ The editorial complained of related not to plaintiff as an individual but to his public assertions as to the effect of an affirmative vote on the liquor referendum; it was fair comment because it gave to the reader the factual basis for the critical comments, the factual basis being what plaintiff had said and what the Attorney General had ruled as to the effect of an affirmative vote; the criticism was in the form of opinions of the editorial writer; and it related to a matter in which the public had a valid and lively interest.

██ █ Whether the privilege has been abused is usually a question of whether the criticism was made with an honest purpose or was made with malice in the sense of spite or ill will, or culpable recklessness or negligence. ██ █ When the occasion is privileged, malice will not

be presumed. The presumption is that it was in good faith. Yancy v. Gillespie, supra. ▆▆ ▆ Nothing in the editorial indicates spite, ill will, culpable recklessness or negligence.

▆▆ ▆ Either the privilege is abused, or does not apply, where a defamatory publication contains *statements of fact* which have no foundation of truth. Hartzog v. United Press Assns., 202 F. 2d 81. Another example of the denial of immunity because of a false statement of fact, as distinguished from opinion based on facts or facts reasonably assumed to be true, is Belt v. Tribune Co. (Ill.), 128 N. E. 2d 638. Count one did not state a cause of action.

▆▆ ▆ The second count of the declaration could probably be disposed of under what has already been said concerning count one, since it was a reprint of an editorial from another paper. But the publication complained of in the second count is not actionable for another reason. It refers to no particular person, but to the "Drys", referring to those who advocated no change in the prohibition laws, which included a majority of the qualified voters participating in the liquor referendum. Nowhere is plaintiff identified in the publication. 33 Am. Jur., Par. 191, 192; Brewer v. Hearst Publishing Co., 185 F. 2d 846; 53 C. J. S., Libel and Slander, par. 11c.

### ON CROSS-APPEAL

Defendant, Delta Democrat Publishing Company, filed a counterclaim alleging that plaintiff, Henry Edmonds, was employed as Executive Director of the United Drys Association of Mississippi, with the duty of promoting the negative side of the issue on the liquor referendum vote; that plaintiff knew the publications complained of in his declaration were not actionable; that plaintiff timed the filing of his suit against defendant in reference to the vote on the referendum and gave wide

publicity of the fact for the sole purpose of influencing the vote on the referendum; that the suit was not filed for the purpose of securing compensatory damages and was maliciously filed; that defendant was put to large expense in defending the suit. Defendant demanded actual and punitive damages.

In its brief defendant says its counterclaim is not one for malicious prosecution, but that it is for abuse of process.

 There is a distinction between a suit for malicious prosecution and one for abuse of process. In the former, these elements are essential: Malice, want of probable cause, and that the former proceedings have been determined. In the latter, these elements are essential: An ulterior purpose, and the perversion of the process after its issuance so as to accomplish a result not commanded by it or not lawfully obtainable under it. 1 Am. Jur., Abuse of Process, Par. 3, 6. The particular abuses that give rise to an action for abuse of process are discussed, Ibid., par. 11, et seq. Representative of the relatively few cases where abuse of process was involved is to be found in 14 A. L. R. 2d 322.

 It is understandable why defendant makes it clear that his counterclaim is not based on malicious prosecution, because it would have been impossible for it to have alleged that the former proceedings had been terminated. What defendant complains of in his counterclaim is not based on any perversion of any process, but simply the filing of the suit. The summons was not served on defendant until months after plaintiff is alleged to have wrongfully made use of the publicity attending the filing of the suit. Nothing unlawful was done under any process. It cannot be argued that the process of the court was abused by accomplishing a result not commanded by it or not lawfully obtainable under it when the only process involved was a simple sum-

mon to defend the suit. Typical of the cases where the action of abuse of process will lie is where through the employment of process a man has been arrested or his property seized in order to extort payment of money from him, even though the claim be a just one other than in that suit, or to prevent a conveyance, or to compel him to give up possession to some thing or value, when such were not the legal objects of the suit.

The counterclaim did not state a cause of action.

██ ██ Affirmed on direct and cross appeals.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge,* JJ. concur.