200 So.2d 453 (1967)
Henry REAVES and Aviva Futorian et al.
v.
W.B. FOSTER.
No. 44119.
Supreme Court of Mississippi.
June 12, 1967.
Suggestion of Error Overruled July 10, 1967.
Freeland & Gafford, Oxford, Miss., John L. Saltonstall, Jr., Boston, Mass., Mark DeWolfe Howe, Cambridge, Mass., for appellants.
*454 John B. Farese, L. Hamer McKenzie, Ashland, Miss., Wall Doxey, Jr., Holly Springs, Miss., for appellee.
JONES, Justice.
In Benton County there was an attendance center known as Old Salem for colored students. Appellee was the principal of that school. The colored citizens had an organization called the Benton County Citizens Club, one of its objectives alleged to be the betterment of the members of the colored race, particularly from an educational standpoint. This club had been in existence for some time. During the summer of 1964, one of the appellants, Aviva Futorian, came to the county as a civil rights worker for the alleged purpose of assisting in the betterment of the conditions of the members of the colored race. There, she worked with the club, and it was decided in consultation that a publication or paper would help unify the members of the race in the club's objectives.
Therefore, several of them established such a pamphlet or newspaper, designated as, "The Freedom Train." From the record, it appears the colored citizens had for some time been dissatisfied with the manner in which the school was being operated. They were also disturbed about four teachers, other than appellee. In the pamphlet, articles written by various people, some of whom were defendants, criticized the acts of appellee in the supervision of the school. All of the defendants before this Court either contributed articles to or circulated said pamphlet, which was mimeographed.
On the front page of one issue appeared a cartoon depicting a man marked, "Supt. of School," holding a hoop. Squatting by this figure was the drawing of another on which was marked, "Principal," and the "Supt. of School" was saying, "Jump." Another page contained a chart designated as "OUR PUBLIC SCHOOL ORGANIZATIONAL CHART," at the top of which was the "County Board." Under that was a space marked, "Mister Dictator." At one end of that space was a line drawn toward a block in which "Elementary Principal" was marked, and the line continued to "Teachers." From the other end of the space, marked "Mister Dictator," ran a line downward to the "High School," and in this line was a space marked, "Puppet I or Dummy I." Another cartoon in a subsequent issue had a picture of a house on which was written "Old Salem" and under which was written "Uncle Tom's Cabin." In front of this building was pictured the figure of a man, sitting in a chair, smoking a cigar, with his hands crossed. At the bottom of the page were the words, "Uncle Tom's Cabin."
The pamphlet's articles were written by students and others. As a result of these cartoons and articles, appellee filed suit against Aviva Futorian and a number of others alleging libel and slander.
The case was tried before the judge without a jury and upon completion of the hearing a judgment was entered in favor of appellee in the amount of $60,000, from which this appeal is taken.
We have held the case for much longer than usual undertaking to make a thorough study and, rather than considering same in the group which heard the arguments, have submitted it to the Court en banc. It is the unanimous opinion that the judgment cannot be sustained, and the case is therefore reversed and dismissed.
Appellee, in its brief, summarizes the statements, which he claims to be libelous, as follows:
"W.B. Foster is something less than a man. One who is afraid of losing his job and consequently will do anything Mr. Bennett (Superintendent of Education) tells him to do, right or wrong. He is a puppet and a dummy. He has not been considered a man for a long time. He is an Uncle Tom, a traitor to his race, a stooge, a stool pigeon, an informer and a betrayer of his people. One who will sell *455 out his people for his own interests. A stupid man and one everyone would like to hit two times or more. A man who has pushed himself further in the darkness of manhood. A man who is against his own race's cause. A man who tried to intimidate his own race by telling a bus driver that the `white people were going to make all those who didn't send their children back to school move off their land.' A colored person who is against the advancement of his race. One who hated Aviva Futorian because she was a COFO worker and one who set a bad example."
The words "traitor," "stooge," "stool pigeon," "informer," "betrayer," are from a witness' conception of the meaning of an "Uncle Tom." Others might differ as to this. Although it would not be decisive, we have not located any statement in the pamphlet that appellee would do anything "right or wrong."
The record shows that some of the complaints against the appellee were: (1) That the children were permitted to leave the campus during school hours and wander about town; (2) That some of the children were required to assist in the cafeteria at times when they should have been in class; (3) That gambling was permitted on the buses and at school; and, (4) That the children had to work on the lawn.
The PTA of the school also had been interested in the manner of operation of the school.
There were other complaints in the pamphlet that he did nothing for himself and exercised no judgment, and was absolutely obedient to the orders of the superintendent of education.
The articles in the paper contributed by students and others inspired the cartoons which were in the nature of editorial opinions, based upon said articles.
Appellant raises two questions here  (1) that there is no liability under the Fair Comment Doctrine, as recognized in this State, and (2) that there can be no liability under the proof, because of the First and Fourteenth Amendments to the United States Constitution and the requirements thereunder as announced by the Supreme Court of the United States, in order to sustain a verdict.

The Fair Comment Doctrine
This doctrine as observed in this State is clearly and succinctly stated in the case of Edmonds v. Delta Democrat Pub. Co., 230 Miss. 583, 93 So.2d 171 (1957).
The appellant there was an attorney who at the time of the publication upon which the suit was based was executive secretary of United Drys Association of Mississippi which was engaged in an effort to defeat the legalization of liquor in a referendum. He had always enjoyed a good reputation, private and professionally. On June 15, 1952, the defendant, a newspaper, published and distributed therein an editorial stating that he had misrepresented the statute that would become law in event the people voted "yes" in said election.
The plaintiff alleged that the editorial contained false and libelous words and was meant to imply and did imply that plaintiff was given to lying, and his word was not to be trusted; that defendant falsely and maliciously in disregard of the truth did publish this editorial containing said words which were libelous per se. There, this Court said:
"The declaration showed that plaintiff occupied a prominent position which was quasi-public in nature and the editorial in question was a comment and criticism of the assertions of plaintiff in regard to a matter of public interest; and the editorial was not, and was not alleged to be, ambiguous. It was not alleged that there was in the editorial any falsity in the statements of fact on which the writer thereof based his critcisms of plaintiff, only that the editorial contained false and *456 libelous words of and concerning plaintiff, which could only be construed to mean that the strictures or critcisms themselves were false and libelous. In this state of the pleading it shows on its face the occasion was conditionally privileged, and it is a question of law whether that privilege was abused. * * *"
"* * * When a person comes prominently forward in any way and becomes a public or quasi-public figure, he invites free expression of public opinion, including criticism. When such criticism is in the form of an opinion, relates to public assertions or acts rather than to the individual in his private affairs, is fair in the sense that the reader can understand the factual basis for the opinions containing the criticism, and the publication relates to a matter of public interest, then the occasion is conditionally privileged; and no action will lie for such publication no matter how severe the criticism or unfavorable the comments, if the privilege is not abused. * * * The immunity of the doctrine of fair comment applies not only to newspapers but to the public generally. Newell, Slander and Libel, 4th ed., p. 516. The interests of society require that immunity should be granted to the discussion of public affairs and that all acts and matters of a public nature may be freely discussed and published with fitting comments and strictures. * * *" 230 Miss. at 590-591, 93 So.2d at 173.
The Court further said:
"Whether the privilege has been abused is usually a question of whether the criticism was made with an honest purpose or was made with malice in the sense of spite or ill will, or culpable recklessness or negligence. When the occasion is privileged, malice will not be presumed. The presumption is that it was in good faith. Yancey v. Gillespie, 242 N.C. 227, 87 S.E.2d 210, supra. Nothing in the editorial indicates spite, ill will, culpable recklessness or negligence." 230 Miss. at 591-592, 93 So.2d at 174.
This decision holds as seen that under the doctrine of fair comment a man occupying a prominent position public or quasi-public in nature is subject to serve criticism and malice is not presumed, but must be proven. The matters here published and on which recovery was sought appear to be opinions.
In this case, the statements to us appear to be fair comment in a matter concerning a large sector of the county's population, in the handling of a matter connected with government, and in an effort by those involved to better conditions in the school as they deemed it. Our constitution provides our State may have a common school system, and the laws provide for the selection of the trustees and county superintendents, and the appointment by the superintendent and board of trustees of the principal to be in charge of a school where the young of the county are given an opportunity to secure an education at the taxpayers' expense.
The articles in the pamphlet showing facts support the opinions. The burden is on plaintiff to show malice. The judge of the trial court held the intent (to have another principal at the school) showed malice. To permit an intent to remove a person from an office to be proof of malice would never do. Otherwise, how would a petition for recall be secured in those states authorizing recall? The plaintiff failed in the proof to establish malice that would permit recovery.

First and Fourteenth Amendments to the United States Constitution as Affecting this Suit.
New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), involved an elected official of Montgomery, Alabama. In that case, the Supreme Court of the United States held that where a state court awarded a judgment in a civil action *457 on libel and slander this was "state action" under the Fourteenth Amendment. It further held that a factual error, defamatory of an official's reputation, was insufficient to warrant an award of damages for a false statement, unless actual malice existed, and it was held that actual malice could only be shown by proof that the statements were made when known to be false, or were made in reckless disregard of whether true or false, and the burden was on the party claiming defamation to prove not only that the statement was false but that it was made with knowledge by the defendant that it was false, or with reckless disregard as to whether it was false or not.
This case was followed by Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), wherein a district attorney in Louisiana accused certain state court judges of laziness, inefficiency, and hampering his efforts to enforce the vice laws and there was an inference that the said judges might be subject to racketeer influence. The district attorney was prosecuted under a Louisiana criminal defamation statute which included prosecution for true statements, as well as false statements, if made with ill will, or without reasonable belief that they are true. The Supreme Court of the United States held that the rule stated in the New York Times v. Sullivan case applied.
The judges there claimed that the district attorney's statements reflected upon their private lives. The Supreme Court said the statements could not be construed as constituting only a purely private defamation; that the accusations concerned the judges' conduct of business. It was held any criticism of the manner in which a public official performed his duties would tend to affect his private, as well as his public, reputation. Further, that the New York Times case is not rendered inapplicable because an official's private reputation, as well as his public reputation, is harmed. It was there stated,
"* * * The New York Times standard forbids the punishment of false statements, unless made with knowledge of their falsity or in reckless disregard of whether they are true or false." 379 U.S. at 78, 85 S.Ct. at 217, 13 L.Ed.2d at 135.
The Louisiana statute punishes false statements without regard to the New York Times test, and "actual malice" by Louisiana decisions means "[hatred], ill will or enmity, or a wanton desire to injure" and, even if ill will is not established, a false statement about an official may be punished if not made in the reasonable belief that it is true. The Louisiana Supreme Court affirmed the conviction solely on the ground that the evidence supported the trial court's finding of ill will, enmity, or a wanton desire to injure. The trial court also rested the conviction on the finding that the statement was false and not made in the reasonable belief of its truth.
The Supreme Court of the United States held the test laid down in the New York Times case is not keyed to ordinary care, but that the defeasance of the privilege is conditioned, not on mere negligence, but on reckless disregard for the truth. The Court again stated that as held in the New York Times case an official might be allowed a civil remedy only if he established that the utterances were false and that it was made with knowledge of its falsity or in reckless disregard as to whether false or true.
In the case of Henry v. Collins (from this Court), 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965), we had approved a conviction where the trial court gave an instruction that malice did not necessarily mean hatred or ill will, but that malice may consist of culpable recklessness or ill will, and wanton disregard of the rights and interests of the person defamed. The jury was also told by an instruction that, if they believed from the evidence that the defendant published a false statement charging the defendant with a diabolic plot, malice might be inferred from the falsity and libelous nature of the statement.
*458 The Supreme Court of the United States held that a jury might have construed these instructions to warrant recovery on the showing of an intent to inflict harm rather than intent to inflict harm through falsehood and again recited the requirement of the New York Times case as to proof.
These cases all hold that the burden is on the plaintiff not only to prove the statements were false but that the defendant knew the statements to be false and either published them with such knowledge, or with a reckles disregard as to whether they were true or not, where public officials are involved.
The courts have inferentially and actually extended the New York Times v. Sullivan rule not only to include public officials, but to include anybody engaged in activity relative to matters of public interest, public issues, or concern, particularly if connected with government.
In Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the rule was applied to a superintendent of state parks appointed to office. The New York Times rule applied in Pauling v. Globe Democratic Pub. Co., 362 F.2d 188 (8th Cir.1966). On page 195 the principles established by the New York Times case are enumerated. On pages 196-197 of the same report are numerous decisions where application of the rule has been made to appointive officers and others, such as a chairman of a County Democratic Primary Board, candidates for office, as well as incumbents, and it also cites two cases where the principle is applicable to a person of prominence who involves himself in a matter of public interest or concern. See also Walker v. Courier Journal et al., 368 F.2d 189 (6th Cir.1966).
These decisions all hold that the burden is on the plaintiff to show, as stated, not only that the statements were false, but that they were published with knowledge of their falsity or in reckless disregard as to whether they were true or false.
The plaintiff offered evidence by himself that he was not an Uncle Tom, but there was no evidence that the other statements made upon which suit was filed were false, and there was no evidence that the appellants knew that they were false or that the statements were printed or circulated with reckless disregard as to whether they were true or false.
The court in rendering its finding of facts on the trial of the case based liability upon the fact that there was no evidence of truthfulness of any of the drawings or articles and there had not been shown any remorse or apology by the defendants.
The finding of facts indicates that the judge was trying the case under Mississippi law as to an ordinary libel and slander suit and not upon the law either as to fair comment or as announced by the Supreme Court of the United States. He further found that malice had been clearly shown, but that finding was based upon the testimony of the defendants who candidly stated that their intentions were to undertake to have Foster removed from his position as principal.
In the Garrison case, supra, it was held that ill will and intent to injure were not sufficient to sustain the action, neither was proof of injury sufficient nor was the fact that the private reputation was injured sufficient, provided it was coupled with official action, and it further held, as this Court held in the Edmonds case, that there was no presumption of malice.
The federal courts have preempted the field of libel and slander and have established that hatred, ill will, enmity, intent to harm or negligence are insufficient to establish malice toward those involved in discussions on public issues. That the defendants are protected under the First and Fourteenth Amendments of the United States Constitution, unless the plaintiff shows malice by proving that the defendant when he published the words  (1) either knew they were false, or (2) *459 published them in reckless disregard of whether true or not.
We are required to follow the Supreme Court of the United States.
In summary, appellee wholly failed to sustain the burden of proof in this case, for two reasons: The publications by appellants fall within the fair comment rule on public issues, under Edmonds v. Delta Democrat Pub. Co., supra; and, further, appellee's evidence was insufficient to comply with the constitutional requirements of the New York Times v. Sullivan rule with reference to statements concerning a public official or one substantially connected with public affairs. Hence this case is reversed and judgment is rendered here for appellants.
Reversed and judgment rendered here for appellants.
All Justices concur, except INZER and SMITH, JJ., who took no part.