**Robert E. ETHRIDGE, Plaintiff,**

v.

**NORTH MISSISSIPPI COMMUNICATIONS, INC., Defendant.**

**No. DC 78–28–S.**

United States District Court,
N. D. Mississippi,
Delta Division.

Sept. 8, 1978.

James L. Bonner, Olive Branch, Miss., for plaintiff.

Ross L. Franks, Walker, Franks, Rone, Bridgforth & Woods, Ltd., Hernando, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The defendant, North Mississippi Communications, Inc., has filed a motion for summary judgment. The motion has been submitted on the pleadings, affidavits presented by the parties, stipulations and admissions of fact and memoranda of the parties. The matter is ripe for decision.

Plaintiff, Robert E. Ethridge, is shown by the record to have been employed, during the period here pertinent, as an investigator and undercover narcotics agent for the Police Department of the City of Olive Branch, Mississippi.

Defendant publishes *The North Mississippi Times* (hereafter the "Times"), a weekly newspaper at Hernando, in DeSoto County, Mississippi. Olive Branch is a municipality of the county.

On March 31, 1977, the Times carried a long and extensive article pertaining to the activities of plaintiff in the performance of his duties as investigator and undercover narcotics agent for the Police Department for the City of Olive Branch. Plaintiff contends that the article contains libelous matter and has brought this action for compensatory and punitive damages.

The Times motion for summary judgment is grounded on two theories. One theory is that plaintiff did not afford the Times an opportunity to correct any factual misstatement contained in the article and therefore, plaintiff is barred from prosecuting the action by Miss.Code Ann. § 95–1–5 (1972).[1]

---

1. Miss.Code Ann. § 95–1–5 (1972) provides:

(1) Before any civil action is brought for publication, in a newspaper domiciled and published in this state or authorized to do business in Mississippi so as to be subject to the jurisdiction of the courts of this state, of a libel, or against any radio or television station domiciled in this state, the plaintiff shall, at least ten (10) days before instituting any such action, serve notice in writing on the defendant at its regular place of business, specifying the article, broadcast or telecast, and the statements therein, which he alleges to be false and defamatory.

(2) If it appears upon the trial that said article was published, broadcast or telecast in good faith, that its falsity was due to an honest mistake of the facts, and there were reasonable grounds for believing that the statements in said article, broadcast or telecast were true, and that within ten (10) days after the service

The record reflects that the notice for which provision is made in section 95–1–5 was not given to defendant by the plaintiff. Unless the article can be classified as an editorial or a regularly published column which expresses matters of opinion, and, thus, within the exceptions made in the final paragraph of section 95–1–5, it is abundantly clear that the motion is well taken.

Plaintiff argues, however, that there is a genuine issue as to whether the article contains matters of opinion and editorial comment so as to bring the article within the exception, making the notice provision of the statute inapplicable.

Plaintiff makes special reference to that portion of the article which classifies his activities as "Baretta" like tactics and to the following excerpt "[n]umerous complaints have evolved since last fall when Olive Branch employed Bob Ethridge, 30, as its chief investigator and also narcotics agent. *The complaints stem from harrassment by Ethridge* as well as arrests made and law enforcement practiced outside the city limits where Ethridge has no jurisdiction. . . . Another businessman in Olive Branch *allegedly* had a shot gun pointed at him by Ethridge. He refused to comment as he was turning the matter over to an attorney."

Plaintiff contends that other statements of a character similar to the above quotations, also constitute editorializing thus making the article an editorial or a regularly published column in which matters of opinion are expressed.

Assuming arguendo that the article can be characterized as an editorial or a regularly published column in which matters of

opinion are expressed and is not controlled by the notice provision of the statute, defendant argues, nevertheless, that the motion is well taken because plaintiff, as a public officer, can be subjected to the characterization attributed to him in the article, under the rule announced by the Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

The rule stated in *New York Times v. Sullivan* provides:

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice" —that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

376 U.S. at 279–80, 84 S.Ct. at 726.

In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court extended the *New York Times* standard to "public figures" who are not "public officers".

The United States Court of Appeals for the Fifth Circuit extended the rule to publications involving matters of great public interest. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 861 (5th Cir. 1970); *Time, Inc. v. McLaney*, 406 F.2d 565 (5th Cir. 1969); cert. den., 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969).

The Mississippi Supreme Court recognized the standard later adopted by the Supreme Court of the United States in the *New York Times* case, in *Edmonds v. Delta Democrat Publishing Company*, 230 Miss. 583, 93 So.2d 171, 173 (1957). In *Edmonds*,

---

of said notice a full and fair correction, apology and retraction was published in the same edition or corresponding issues of the newspaper in which said article appeared, and in as conspicuous place and type as was said original article, or was broadcast or telecast under like conditions correcting an honest mistake, and if the jury shall so find, the plaintiff in such case shall recover only actual damages. The burden of proof of the foregoing facts shall be affirmative defenses of the defendant and pled as such.

(3) This section shall not apply to any publication concerning a candidate for public office made within ten (10) days of any primary, general or special election in which such candidate's candidacy for or election to public office is to be determined, *and this section shall not apply to any editorial or to any regularly published column in which matters of opinions are expressed.* (Emphasis supplied).

the court referred to the rule or standard as "the doctrine of fair comment" (93 So.2d at 173), and extended its applicability to an attorney who held a position, quasi-public in nature, with a temperance organization.

The Mississippi Supreme Court followed the New York Times standard in *Reaves v. Foster*, 200 So.2d 453 (Miss.1967), where the court reversed a lower court judgment for a school principal and dismissed his suit holding that the "evidence was insufficient to comply with the constitutional requirements of the *New York Times v. Sullivan* rule, with reference to statements concerning "a public official or one substantially connected with public affairs". 200 So.2d at 459.

Plaintiff argues, however, that he is neither a "public officer", nor "public figure", and that his rights are not to be judged by the *New York Times* standard. Plaintiff cites *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), as sustaining his position. In *Gertz*, the plaintiff was neither a "public officer", nor a "public figure"; but on the other hand, was a private citizen engaged in the practice of law and the controversy out of which the complaint arose had its genesis in a civil action in which he represented one of the parties. Mr. Justice Powell, speaking for the court opined that the evidence was not sufficient to justify the characterization of plaintiff as a "public figure". In reaching this conclusion, Justice Powell said: "[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." 418 U.S. at 352, 94 S.Ct. at 3013.

Here, however, plaintiff was, at the time in question, a public officer, an employee of the City of Olive Branch. He was involved in the affairs of society as an officer of the law engaged as an undercover narcotics agent or investigator for the City.

Plaintiff's reliance upon *Gertz, supra,* is misplaced. *Gertz* is inapposite to the action sub judice. In *Gertz*, the injured party (plaintiff) was not a public official, but a private individual. It was contended by defendant that plaintiff came within the *New York Times* standard because he was a "public figure". The court held, as above mentioned, that the plaintiff-attorney was neither a public official nor a public figure within the First Amendment rule and defendant could not utilize the defense inherent in the New York Times *rule*.

Plaintiff argues that summary judgment is not here appropriate because there exists a genuine issue of whether plaintiff is a "public figure" and thus, whether defendant can invoke the *New York Times* standard and require plaintiff to prove that the article appearing in defendant's newspaper was published with actual malice—, that is, with knowledge that the facts related therein were false or with reckless disregard of whether they were false or not. *New York Times Co. v. Sullivan, supra,* 418 U.S. at 376, 94 S.Ct. 2997.

In support of his position, plaintiff has submitted affidavits of certain city officials, who were in office during the pertinent period, namely Mayor M. C. Herrington, Vice-Mayor and Alderman George Harrison, Alderman Ray Magee, and City Manager Robert F. Williams; also, the affidavit of Doug W. Jones, publisher and editor of the *DeSoto County Tribune*, a newspaper having a general circulation in the City of Olive Branch. These affidavits state essentially that plaintiff was employed as an investigator or undercover agent for the City of Olive Branch during the period of his part-time employment but was not widely known in the community as a policeman or law enforcement officer and, due to the special nature of his work, was not recognized or considered as a public figure. The mayor states in his affidavit, that plaintiff was not publicly recognized or identified as a police officer by some of the city officials, including members of the board of aldermen. An alderman states that plaintiff was not publicly recognized or identified as a police officer by some public officials.

On the other hand, the editor of the Times, states in an affidavit filed by him that plaintiff was working during the peri-

od in question as a full-time investigator for the Olive Branch Police Department, that plaintiff's connection with the City of Olive Branch was widely and publicly known, and that there existed much controversy in the public domain over his activities. Defendant has also presented an affidavit by Dennis G. Moore, Youth Counselor for DeSoto County that during the winter and spring of 1977, plaintiff was an employee and investigator for the Police Department of the City of Olive Branch, that plaintiff's connection with the City of Olive Branch was widely and publicly known; and that he, the affiant, worked with plaintiff in various cases which plaintiff referred to his office.

The affidavit of the Chancery Court Clerk of DeSoto County, who also functions as Youth Referee in the county, states that during the time plaintiff was employed by the City of Olive Branch, as an investigator, plaintiff appeared in the Youth Court and publicly stated that he was hired as an investigator by the City of Olive Branch.

The affidavit of the Juvenile officer of DeSoto County states that during the time of plaintiff's employment by the City of Olive Branch, the affiant knew that plaintiff was working as an investigator for the Police Department of the City of Olive Branch and that this fact was well and publicly known.

The affidavit of the Youth Court Volunteer Counselor for the county supports defendant's position.

The defendant has shown by properly certified copies of the minutes of the Board of Aldermen of the City of Olive Branch that plaintiff appeared before the board on at least four occasions when his activities as a special investigator were the subject of discussion.

The affidavit of the Chief of Police of the city, Doug Herrington, has been submitted by defendant. Mr. Herrington states that plaintiff worked for the police department under his supervision; that plaintiff's employment as a plain-clothes investigator was generally and publicly known; that plaintiff's activities were the subject of public debate in the community; and that plaintiff made several appearances before the board.

The affidavit of the Chancery Clerk of DeSoto County, contains copies of a number of issues of the Olive Branch Tribune, owned and edited by Mr. Jones. These issues are public records in his office. These records reflect that plaintiff's activities as an investigator for the city were published on several occasions.

There does not appear to be a genuine issue of whether plaintiff's activities as an investigator for the City of Olive Branch were publicly known and the subject of extended debate among the citizens in the area. It is almost inconceivable that the mayor, members of the board of aldermen, other public officials, and the owner, editor and publisher of the local newspaper did not recognize plaintiff's public image in the community.

In considering the propriety of a motion for summary judgment, the court looks to evidentiary items in the file and not to the conclusions of the pleader. *Garcia v. American Marine Corp.*, 432 F.2d 6 (5th Cir. 1970). The record does not reveal any fact which will support a holding that the statements contained in the published article were false; or that the Times published the statements knowing they were false; or that the Times published the statements with reckless disregard of whether they were true or false.

Plaintiff is not only shown to have been a "public official", but a "public figure" as well. Under these circumstances the motion should be sustained. This is especially true when First Amendment Rights are involved, as is the case here.

The Fifth Circuit in *Bon Air Hotel, Inc. v. Time, Inc.*, supra, at 864, adopted a passage from *Wasserman v. Time, Inc.*, 138 U.S. App.D.C. 7, 9, 424 F.2d 920, 922 (1970) where the court in a concurring opinion by Circuit Judge J. Skelly Wright said:

In my judgment *New York Times Co. v. Sullivan* makes actual malice a constitutional issue to be decided in the first instance by the trial judge applying the

Times test of actual knowledge or reckless disregard of the truth. (Citations omitted). Unless the court finds, on the basis of pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the Times sense, it should grant summary judgment for the defendant.

Judge Robert L. Carter, District Judge for the Southern District of New York, in *Guitar v. Westinghouse Electric Corporation,* 396 F.Supp. 1042, 1053 (1975), said:

Defendants are entitled to summary judgment where the alleged defamation constitutes fair comment and plaintiff fails to set forth evidentiary facts, which would warrant a trial, to support the allegations that defendants were motivated by malice. (Citations omitted). Summary judgment is not defeated by charges based upon surmise, conjecture and suspicion, (Citations omitted) . . .

The "rule" that summary judgment should be reluctantly granted where state of mind is at issue should not dissuade the court from its duty to grant such relief where no material fact issue exists, (Citations omitted); the question of malice is for the jury only when evidence exists warranting that issue's submission to that body. (Citations omitted) . . . .
Moreover, because of the importance of free speech, summary judgment *is* the "rule", and not the exception, in defamation cases. (footnotes omitted)

See also, *Edmonds v. Delta Democrat Publishing Company, supra,* where the Mississippi Supreme Court affirmed the trial court's disposition of the case on demurrer to the declaration (complaint) and motion to strike counterclaim having the effect of disposing the case as if on summary judgment.

The court has concluded not only that plaintiff was, during the pertinent period, a "public officer" but also a "public figure"; that defendant may invoke the New York Times standard in defending the action sub judice and that the motion for summary judgment is well taken.

The court will enter the appropriate order.