549 So.2d 1332 (1989)
The MERIDIAN STAR, INC. and Jim Wynn
v.
Howard WILLIAMS.
The MERIDIAN STAR, INC. and Jim Wynn
v.
Dr. Hobert KORNEGAY, Jr.
Nos. 07-58608, 07-58609.
Supreme Court of Mississippi.
October 4, 1989.
*1333 W.A. Temple, Meridian, for appellants.
Joe R. Odom, Adams & Odom, Meridian, for appellees.
Before HAWKINS, P.J., and PRATHER and BLASS, JJ.
BLASS, Justice, for the Court:
Dr. Hobert Kornegay, Jr. and Howard Williams, members of the Meridian City Council, each brought a libel action against The Meridian Star, Inc., and its editor, Jim Wynn. Both complained of the editorials published on October 3, and November 6, 1985, and each sought $100,000 in actual and $1,000,000 in punitive damages. The cases were consolidated for trial. Both defendants moved to dismiss or, in the alternative, for summary judgment. The motions were denied, and the case was tried before a jury which found for the plaintiffs. The trial court entered judgment accordingly for $20,000 in each case. We reverse.
The basis of the complaint was two editorials written by Mr. Wynn: "Mayor Learning that Councilmen Can't be Trusted" (October 3, 1985) and "Council Actions Cause Concern for City's Future" (November 6, 1985).
In July, 1985, the City of Meridian changed from a council-manager to a mayor-council form of government. Wallace Heggie served as City Manager until July, 1985. Although the mayor-council government has no city manager, a comparable administrative position exists which is called the Chief Administrative Officer (CAO). During the transition in governments, all former department heads were retained in their positions for the first ninety days. Wallace Heggie was appointed CAO by unanimous vote of the Council for this same ninety-day period.
On October 1, 1985, at the end of the ninety-day period, the Council met and voted on the appointment of Wallace Heggie as CAO. At that meeting the Council voted three to two against appointing Heggie. That same evening, Mayor Kemp told the appellant, Jim Wynn about the vote and the events leading to it.
Mayor Kemp testified at pretrial depositions and at trial that he notified the council members of his intent to appoint Heggie prior to the October 1, 1985. He invited any objections prior to the submission of Heggie's name in order to avoid any embarrassment to Heggie or the Council. Kemp said only one member of the City Council, Mr. Frasier, clearly opposed the appointment and he understood that the others would approve. Heggie also contacted the other members and was under the same impression.
Following his conversation with Mayor Kemp, Jim Wynn wrote the first of the subject editorials published October 3, 1985. After publication of this editorial, Kornegay and Williams consulted their attorney who wrote to The Meridian Star stating that the editorial was false and defamatory and demanding a public apology within ten days. The Meridian Star responded that nothing stated in the October 3, 1985, editorial was untrue or defamatory and no apology was made.
On November 5, 1985, the City Council met and a request for approval of a claim docket was considered. Among other *1334 things, a $5,500 payment to Merrihope, an antebellum home in Meridian, was considered. This item had been approved by the Council in an earlier action, but was on the claim docket then for approval of payment. Councilmen Frasier, Kornegay and Williams voted against payment. On November 6, 1985, Jim Wynn wrote an editorial, "Council actions Cause Concern for City's Future," which was published in The Meridian Star.
Attached to defendants' motions to dismiss, or in the alternative for a summary judgment, were affidavits of James B. Skewes, editor and publisher of The Meridian Star, and Jim Wynn. Both indicated the editorials contained factually correct information and that the editorials were commentary and opinions. Jim Wynn referred to the block which appears above all editorials in The Meridian Star clearly labeling the articles as opinions. He stated that so far as he knew or believed, the facts in both editorials were true and had been obtained from reliable sources. These included the Mayor of the City of Meridian, J.W. Kemp. Wynn also stated that if any fact in the two editorials was incorrect, he did not know it to be incorrect at the time of the publication; that the plaintiffs were public officials at the time the editorials were published; and that neither editorial was written and published with malice.
The plaintiffs filed an answer to the motions. The only evidence of actual malice claimed by Dr. Kornegay was his statement that Wynn made racial slurs about him. Mr. Williams' counter-affidavit contains no allegations of fact to support actual malice. Neither affidavit contained evidence of "actual malice".
Jim Wynn's testimony at trial was essentially identical to his affidavit. Mayor Kemp's and Heggie's trial testimony confirmed that the facts in the editorials were true.
The threshold question in this case is whether the statements made in the subject articles are defamatory. Fulton v. Mississippi Publishers Corp., 498 So.2d 1215, 1216 (Miss. 1986); Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984). In determining whether a statement is defamatory, this Court has held that
Any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable per se.
Fulton, 498 So.2d at 1217; Ferguson, 448 So.2d at 275; Whitten v. Commercial Dispatch Publishing Co., 487 So.2d 843, 845 (Miss. 1986); Gulf Publishing Co. v. Lee, 434 So.2d 687, 695 (Miss. 1983). Before a statement may be said to be defamatory, two conditions must be met. "First, the words employed must have clearly been directed toward the Plaintiff. (Second), the defamation must be clear and unmistakable from the words themselves and not be the product of innuendo, speculation or conjecture." Ferguson, 448 So.2d at 275. The Court has emphasized the importance of these two requirements. Id. If the Court decides against the Plaintiff on either of these questions, the case is ended. Fulton, 498 So.2d at 1216. In analyzing an article alleged to be defamatory, it must be considered as a whole and the meaning of the words used in the article must be given their commonly understood meanings. Whitten v. Commercial Dispatch Publishing Corp., 487 So.2d 843, 845 (Miss. 1986); Manasco v. Walley, 216 Miss. 614, 63 So.2d 91, 95 (1953). Further, in order for a statement to be defamatory per se, it must be susceptible of only one meaning and that meaning must be an opprobrious one. Whether the statements are true or false, they must be defamatory or they are not libelous. Fulton, 498 So.2d at 1216.
When the person allegedly defamed is a public official or a public figure, liability may not be imposed for an otherwise actionable publication unless the statements complained of were made with "actual malice," i.e. "with knowledge of their falsity, or in reckless disregard of whether they are true or false." Hatred, ill will, *1335 malice in the common law sense is not enough. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See also. Ferguson, 448 So.2d 271, Gulf Publishing Co., Inc. v. Lee, 434 So.2d 687, 695 (Miss. 1983).
This Court in Gulf Publishing Co., Inc. v. Lee, held, quoting the following passage from New York Times v. Sullivan:
We must "make an independent examination of the whole record, ... so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." Id. at 285, 84 S.Ct. at 728 (citations and footnote omitted).
Gulf Publishing Co., Inc., 434 So.2d at 696.
In a recent case, Johnson v. Delta-Democrat Publishing Co., 531 So.2d 811 (Miss. 1988), this Court reviewed editorial commentary in the Delta Democrat Times concerning a black councilwoman and reaffirmed the Fair Comment Doctrine citing the test in New York Times v. Sullivan. In Johnson, this Court reiterated:
... When a person comes prominently forward in any way and becomes a public or quasi-public figure, he invites free expression of public opinion, including criticism. When such criticism is in the form of an opinion, relates to public assertions of acts rather than to the individual in his private affairs, is fair in the sense that the reader can understand the factual basis for the opinions containing the criticism, and the publication relates to a matter of public interest, then the occasion is conditionally privileged; and no action will lie for such publication no matter how severe the criticism or unfavorable the comments, if the privilege is not abused... . The immunity of the doctrine of fair comment applies not only to newspapers but to the public generally. Newell, Slander and Libel, 4th ed. p. 516. The interests of society require that immunity should be granted to the discussion of public affairs and that all acts and matters of a public nature may be freely discussed and published with fitting comments and strictures... . 230 Miss. at 590-91. 93 So.2d at 173.
As stated in Reaves v. Foster, 200 So.2d 453 (Miss. 1967), quoting from Edmonds v. Delta Democrat Pub. Co., 230 Miss. 583, 93 So.2d 171 (1957).
Johnson, 531 So.2d at 814.
Expressions of opinions, however unreasonable or vituperative, cannot be the subject of a defamation suit. Statements of opinion are entitled to absolute immunity from a defamation suit under the first amendment to the United States Constitution. Gertz v. Robert Welch, Inc., 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). In Gertz, the Supreme Court stated that "(u)nder the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges or juries but on the competition of ideas." Id. at 340-41, 94 S.Ct. at 3007. Thus, ideas and opinions, although incorrect or faulty in their premise, are protected by the United States Constitution and cannot support a defamation action.
Whether a statement constitutes an opinion is a question of law and is thus appropriate for resolution on a motion to dismiss. Marchiondo v. New Mexico State Tribune Co., 98 N.M. 282, 648 P.2d 321, 332 (1982). See National Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 282, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745 (1974); Greenbelt Coop. Pub. Ass'n v. Bresler, 398 U.S. 6, 11, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970).
We have recognized the importance of the free expression of opinions and have held that when criticism and comment are in the form of opinion, the statement is privileged and no action for defamation will lie. Edmonds, 93 So.2d at 173.
A publication is not libelous merely because the opinion may be expressed in terms of strong invectives, profanity, or sarcastic language. National Ass'n of Letter Carriers, 418 U.S. at 282-85, 94 S.Ct. at 2780-81; Greenbelt Coop. Pub. Ass'n, 398 U.S. at 13-15, 90 S.Ct. at 1541-42. *1336 Fiery political dialog, rhetoric, and public debate are sheltered from defamation suits under the First Amendment. Buckley v. Littell, 539 F.2d 882 (2d Cir.1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). In discussing the degree of protection afforded to political opinions in defamation actions, it has been noted that "(o)ne of the cardinal reasons for protecting expression is to assure proper operation of the political process. Courts have been particularly willing to read political invective as mere opinion, privileged under the circumstances." R. Sack, Libel, Slander and Related Problems § IV.2.5 at 160-61.
In the matter before us the appellants moved to dismiss and in the alternative for summary judgment. The appellees responded with counter-affidavits.
A motion for summary judgment tests the legal sufficiency of a party's case. Mississippi Moving & Storage Co. v. Western Electric Co., Inc., 498 So.2d 340, 342 (Miss. 1986); Willis v. Mississippi Farm Bureau Mutual Insurance Co., 481 So.2d 256, 258 (Miss. 1985); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1984). The burden is on the moving party to produce evidence to support the motion for summary judgment only to the extent that the movant would have the burden of proof at trial. Fruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988). He must show (1) that there is no genuine issue of material fact, and (2) that he is entitled to a judgment as a matter of law. Pargo v. Electric Furnace Co., 498 So.2d 833, 835-36 (Miss. 1986); Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Gray v. Baker, 485 So.2d 306, 308 (Miss. 1986). The party opposing the action must, by affidavit or otherwise, set forth specific facts showing that there are indeed genuine issues for trial. Matter of Lunius, 507 So.2d 27, 30 (Miss. 1987); Smith v. First Federal Savings & Loan Association, 460 So.2d 786, 792 (Miss. 1984).
Appellant Williams' counter-affidavit in opposition to the motion for summary judgment states: he was a member of the City Council of the City of Meridian, Mississippi; the editorials are false and misleading; defendants continued to publish false and derogatory editorials; the editorials were written with actual malice on the part of Wynn; Wynn in private conversations and in editorials portrayed plaintiff as a buffoon incapable of making serious intelligent decisions. There are no facts in Williams' counter-affidavit or in the deposition to support his claim of "actual malice" in the constitutional sense, i.e., that the statements published were false but were published knowing they were false or with reckless disregard as to whether or not they were false.
The only evidence of malice submitted by appellant Dr. Kornegay was his allegation that Wynn made racial slurs about him. In deposition, Kornegay said Wynn called him a "nigger" before and after the general elections. Later, Kornegay said Wynn only made the remark once. This, of course, was not alleged to have been published. Mr. Naylor, a black person and Metro-Editor at The Star, said he didn't see any racial prejudice in the editorials; that reference in the editorial to Dr. Kornegay as a black councilman was not a racial slur; and that racial identification of the subject of an article is common in the newspaper business.
There are simply no facts stated in either Kornegay's or Williams' counter-affidavits to support a claim of "actual malice" as required by New York Times v. Sullivan. All the proof submitted to the court below supports either the truth of the editorials, or shows that the writer believed that the facts were true when the editorials were written. In their counter-affidavits neither plaintiff refuted the fact that Wynn received information on the facts from reliable sources and had good reason to believe the facts in the editorials were true when written and published.
A public official plaintiff in a libel case must produce clear and convincing evidence of constitutional actual malice in order to successfully resist a motion for summary judgment which is properly supported. Anderson v. Liberty Lobby, Inc., *1337 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
We have carefully read the subject editorials and find that they simply are not defamatory. Elected or appointed public officials must be prepared to be criticized harshly, unfairly, and sometimes even falsely. Robust and vigorous debate on public affairs is essential to the political health of our society. To protect this free discussion and debate, great latitude must be allowed in commentary on public affairs. Edmonds, 93 So.2d at 173-72; St. Amant v. Thompson, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968). Further, the evidence submitted with the appellants' motions shows conclusively that the facts contained in the two editorials were correct or obtained from reliable sources, and that the source of the facts was Mayor Kemp, and/or other persons who were or had been in city government. Neither plaintiff refutes the fact that Jim Wynn received the information from reliable sources, and believed it to be true.
The plaintiffs failed to meet their burden in resisting the motions for summary judgment, i.e., they failed to present clear and convincing evidence, or indeed, any evidence at all, of constitutional actual malice as required by Sullivan and Anderson. The trial court should have granted summary judgment. Having failed to grant the summary judgment, the trial court erred in denying defendants' motions for directed verdict at the close of all evidence and for judgment not withstanding the verdict, nothing new having been added by defendants' case.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.