# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 90-CA-00536-SCT

*HUNTER L. ROUSSEL, JR.*

*v.*

*JOHN ROBBINS, II*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/27/90 |
| TRIAL JUDGE: | HON. ALFRED G. NICOLS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS W. CROCKETT, JR. |
| | RICKY G. LUKE |
| ATTORNEY FOR APPELLEE: | JOHN M. ROACH |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 10/3/96 |
| MOTION FOR REHEARING FILED: | 10/16/96 |
| MANDATE ISSUED: | 3/13/97 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## I.

## <u>INTRODUCTION</u>

¶1. Attorney John Robbins represented a Brandon, Mississippi property owner who obtained rezoning of his land in January of 1983. Hunter Roussel, who owned property nearby, opposed the rezoning and appealed to the Rankin County Circuit Court. The Circuit Court affirmed the rezoning, and Roussel appealed to this Court. During this appeal, Roussel's lawyer filed with this Court a Motion to Strike a Supplemental Abstract filed by Robbins. The Motion to Strike was denied, and the Circuit Court's judgment was affirmed in September of 1985.

¶2. Three years later, Roussel filed a Bar Complaint against Robbins, alleging that the Supplemental Abstract had contained false statements, and was an attempt to deceive the Court. The Bar

Complaint was dismissed in May of 1989. In June of 1989, Roussel filed suit in the Rankin County Circuit Court, repeating the charges in the Bar Complaint. Robbins obtained from this Court leave to file counterclaims against Roussel for malicious prosecution, and filed these and other counterclaims.

¶3. In April of 1990, Roussel's complaint was dismissed on summary judgment. Robbins' counterclaim went to trial, and a jury awarded him $150,000 in actual damages. Roussel appeals, alleging the following errors:

> **I. THE JURY VERDICT AGAINST ROUSSEL SHOULD BE REVERSED AND RENDERED; OR IN THE ALTERNATIVE, REVERSED AND REMANDED.**

> **A. AS A MATTER OF LAW, JUDGMENT SHOULD BE ENTERED FOR ROUSSEL ON THE MALICIOUS PROSECUTION CLAIM**

> **1. BECAUSE ROUSSEL HAD ABSOLUTE IMMUNITY, THE MALICIOUS PROSECUTION CLAIM SHOULD HAVE BEEN DISMISSED.**

> **2. THE TRIAL COURT ERRED BY ALLOWING THE ISSUE OF PROBABLE CAUSE TO GO TO THE JURY.**

> **B. AS A MATTER OF LAW, JUDGMENT SHOULD BE ENTERED FOR ROUSSEL ON THE LIBEL CLAIM.**

> **C. A NEW TRIAL SHOULD BE GRANTED IN THIS CASE**

> **D. ALTERNATIVELY, THE COURT SHOULD ORDER A NEW TRIAL AS TO DAMAGES AND A REMITTITUR**

> **II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON ROUSSEL'S COMPLAINT.**

We hold that summary judgment was properly granted to Robbins, because Roussel's allegations failed to describe any recognized tort. We affirm the jury's finding in favor of Robbins on the counterclaim. The jury award of $150,000 in damages is affirmed. Additionally, we hereby expressly overrule *Meridian Star, Inc. v. Williams*, 549 So. 2d 1332, 1335 (Miss. 1989), and any case which follows it because this Court incorrectly relied upon *dictum* from *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339 (1974). For correct statements of libel law with regard to opinions, consult *Milkovich v. Lorian Journal Co.,* 497 U.S. 1, 18-21 (1990), and *Keohane v. Wilkerson,* 859 P.2d 291 (Colo. 1993), aff'd, *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994), and cert. denied, 115 S.Ct. 936 (1995).

**II.**

**<u>FACTS AND PROCEDURAL HISTORY</u>**

¶4. Attorney John Robbins, Jr. was hired by property owner A.C. Allen to obtain the rezoning of his land in Brandon from residential to commercial. On March 1, 1983, Allen's land was rezoned from R-1 to C-3, over the objections of Hunter Roussel, who owned land across the street.

¶5. Roussel, represented by attorney Steven Rimmer, filed a Bill of Exceptions appealing the rezoning on March 8, 1983. The Rankin County Circuit Court affirmed the rezoning, and Roussel appealed to this Court. The City of Brandon was represented by Robbins on appeal.

¶6. One document filed by Robbins during the appeal to this Court was a Supplemental Abstract of the Record, pursuant to Supreme Court Rule 41(b). Rimmer filed a Motion to Strike the Supplemental Abstract, on the ground that it was "inaccurate or at best misleading." An exhibit to the Motion compared portions of testimony in the Record, and Robbins' statements in the Abstract. The Motion to Strike was denied, and on September 18, 1985, this Court upheld the Circuit Court's decision.

¶7. In January of 1988, Roussel was examining Rimmer's files on the above litigation, in preparing to oppose another zoning application concerning the same property. There he found the Motion to Strike the Supplemental Abstract. Roussel decided that Robbins had made false statements to this Court, and that such conduct merited a bar complaint. He sent a letter dated November 10, 1988, containing his charges to Pat Scanlon, then-president of the Bar. Roussel's signature on the Complaint was witnessed by his wife and secretary. Scanlon referred Roussel's letter to the Complaint Counsel, and Roussel filed a Complaint form dated November 22, 1988. The Complaint stated in part:

> John Robbins, II, in his representations to the Circuit Court of Rankin County in case NO. 14, 303 and the Supreme Court in case NO. 55,005, employed such means as are inconsistent with truth and he misled the Courts with a genuine creative effort to cause the Courts to decide in favor of his cause. His briefs, abstracts and other works presented to the Courts in the above mentioned cases are filled with inaccuracies, discrepancies, misstatements, efforts to obscure and confuse the truth, misleading statements, lies, deceptions, deceitfulness and trickery.

These allegations referred in part to the Supplemental Abstract filed in the appeal of the Allen rezoning. Additionally, Roussel alleged that Robbins had lied in an affidavit filed in support of the Allen rezoning application in December of 1982, by asserting that the property had not been considered for rezoning during the previous two years, when in fact the Board of Alderman had denied a rezoning application by Allen only eighteen months prior.[1]

¶8. On March 29, 1989, the Complaints Committee dismissed Roussel's Complaint without a hearing.

¶9. On June 30, 1989, Roussel filed suit against Robbins in the Rankin County Circuit Court, repeating the allegations of his bar complaint. Roussel alleged that Robbins had committed a civil fraud against him, causing "substantial economic damage." Roussel also charged that Robbins had been "negligent in the carrying out of his duties as a member of the Mississippi State Bar," and that such negligence, along with Robbins' violation of the attorney's oath, and Miss. Code Ann. §73-3-37 (1972), had also damaged him. Roussel demanded $100,000 in compensatory damages, and $500, 000 in punitive damages.[2]

¶10. An article appeared in the July 12, 1989, Rankin County News concerning Roussel's suit against Robbins. The article read in part:

> In a Monday afternoon telephone interview, Roussel said that Robbins had allegedly changed

the meaning of sentences included in the abstract of record, by eliminating certain words. "Because of that, I lost to the Supreme Court," Roussel said. "Even though my lawyer filed, saying that it was misleading, they (Supreme Court) let it stand. I feel like that I would have won."

¶11. On August 4, 1989, Robbins filed his answer and counterclaim for malicious prosecution of a civil suit, asserting that in filing the Complaint, Roussel was pursuing "a course of persecution, slander and libel" against him. On August 7, Robbins petitioned this Court for permission pursuant to Rule 14(b) of the Rules of Discipline for the Mississippi State Bar to file civil suit in the form of a counterclaim for malicious prosecution. Robbins charged that Roussel, in having his Bar Complaint "witnessed" by two individuals, had not kept the Complaint confidential, as required by the disciplinary rules. He further charged that Roussel's conduct in filing the Bar Complaint, then the civil suit after the Bar Complaint was dismissed, demonstrated Roussel's intent "to maliciously harass Robbins without any legitimate cause or arguable reasons."

¶12. In an order dated January 25, 1990, this Court found that "there appears to or may have been malicious prosecution and malicious circulation to parties or persons not entitled to receive information pertaining to matters arising under the Rules of Discipline." The Court granted Robbins permission to file a counterclaim on these grounds. Robbins amended his counterclaim on March 1, 1990, to reflect the Court's Order. The counterclaim alleged in part:

> (Robbins) has suffered and will continue to suffer in the future, damage to his reputation in the community which has and will affect his standing in the community and in his profession as an attorney in the community, causing him to sustain now and in the future, loss of clients, associations and goodwill.

Robbins demanded $200,00 in actual damages and $200,000 in punitive damages.

¶13. On November 28, 1989, Robbins filed a Motion to Dismiss pursuant to Rule 12(b)(6). On April 24, 1990, Judge Goza issued an opinion granting summary judgment for Robbins. The opinion held that Roussel's charge that Robbins had committed fraud or negligence by stating that the Allen property had not been considered for rezoning within two years was without merit. The judge found that 1) even assuming Robbins' statement was false, Roussel did not have standing to seek redress, since the City of Brandon was the injured party, not Roussel; 2) even assuming Roussel had standing, his claim of fraud or negligence was without basis, since Robbins' statement was not false as a matter of law. The judge stated:

> The only reasonable interpretation of the ordinance regulating the filing of successive rezoning applications on the same property is if an application has been denied on the merits (as opposed to dismissed on procedural grounds), the applicant must wait two years before reapplying. The Mayor and Board of Alderman adopted this interpretation and found that the previous application was not denied on the merits but because another application had been filed within the previous years.

¶14. The judge further held that 3) even if the statement were false, it did not constitute fraud or negligence; while both the City and Roussel had the right to contest the allegation, neither had the right to rely on the truthfulness of the pleadings; 4) even if the statement were false, neither the City

nor Roussel had the right to rely on it, since each had actual knowledge of the statement's falsity; 5) by granting the rezoning, the City found that the application did not violate the ordinance, and in effect adjudicated the correctness of the statement; Roussel is bound by the City's judgment; 6) because he had failed to raise previously the issue of the statement's falsity, Roussel was estopped from litigating it now, and; 7) since Roussel and Robbins' client (Allen) were adversaries in the proceedings before the City, Robbins was under no duty to Roussel which could sustain a claim for negligence. Roussel's complaint was dismissed with prejudice.

¶15. Roussel appealed this decision on May 16, 1990. An Amended Judgment and Opinion entered August 3, 1990, provided that appeal of the summary judgment could be taken, and that Robbins' counterclaims could go to trial. An Order dated September 14, 1990, dismissed without prejudice that portion of Robbins' counterclaim based on Roussel's filing of the suit, on the grounds that the April 24, 1990, summary judgment was currently on appeal, and would not be ripe for trial unless and until affirmed by this Court. Robbins' counterclaims based on malicious prosecution and circulation of the Bar Complaint, were permitted to go forward, as were his claims of libel, slander, and intentional infliction of emotional distress based on Roussel's comments to the Rankin County News. Testimony from trial, held September 24-26, 1990, is summarized below.

### Charlton S. Stanley, Ph.D.

¶16. Stanley, a Jackson psychologist, testified that he had examined Robbins on September 19, 1990. Stanley stated that the bar complaint filed by Roussel had been "psychologically traumatic" to Robbins; that Robbins had suffered from Post-Traumatic Stress Disorder arising from his service in the Korean war, and that the complaint had triggered this disorder. Stanley also testified that he had diagnosed Robbins with situational depression, or "an adjustment disorder with depressed mood," caused by the bar complaint, and that Robbins reported nightmares, appetite disturbance, irritability, lack of concentration, procrastination, and anhedonia. In particular, Stanley testified, Robbins reported "having no joy in his work," where law "had been his life, his love."

### John Robbins

¶17. Robbins, a sole practitioner, testified that he had practiced law in Brandon for thirteen years. He described the litigation involving the Allen property and the bar complaint initiated by Roussel. Robbins testified to seeing an article entitled "Businessman charges attorney with civil fraud" in the Rankin County News, describing Roussel's suit against him. Robbins stated that the headlines in the paper had been "the final nail in the coffin" of triggering his post-traumatic stress disorder. Robbins testified that the bar complaint had sapped him of energy, and diminished his ability "a considerable degree" to practice law and serve his clients. Robbins also stated that his "income went plummeting downward and continued on a plummeting downward because of the aired bar complaint," and that he had been compelled to dismiss his staff.

### Carol Robbins

¶18. Robbins' wife of three years testified that she had noticed a change in her husband's behavior around Thanksgiving of 1988; that he "(did) not stay at the office like he used to"; that he "would explode over things" that didn't warrant it, whereas he had formerly been "very even tempered"; and that he experienced trouble sleeping.

## Mary Roussel

¶19. Roussel's wife of four years testified that she had signed a letter from her husband to Pat Scanlon, but that at that time her husband had not told her the contents of the letter, and that he "had a paper over it." She stated that he had told her that evening that the letter was a bar complaint, but had not named the attorney. On cross-examination, however, Mrs. Roussel admitted that she knew it was the opposing lawyer in the Allen rezoning case. Mrs. Roussel stated that she had not told anyone else that she had witnessed her husband's signature.

## Rita Beckham

¶20. Roussel's secretary testified that she frequently witnessed Roussel's signature on documents, and that she had signed the letter in question without reading it or asking Roussel what it was. However, she also stated that had seen that it said "letter of complaint." On cross-examination, Beckham stated that Roussel had never told her to keep the letter confidential, but that she had not mentioned it to anybody.

## Hunter Roussel, Jr.

¶21. Roussel stated that he had accepted the decision of the Supreme Court upholding the rezoning of the Allen property. He testified that when the property was under consideration for another rezoning, he examined his records from the earlier suit, and that this was the first time he had seen the Motion to Strike. Noting the motion's contention that "substantial portions of the supplemental abstract are inaccurate or at best misleading," Roussel testified, he researched the duties of lawyers, and determined that Robbins had violated these duties by making "false statements" to the court. He then wrote out his complaint in letter form to submit to the Bar. Roussel stated that he had not told his wife or secretary about the contents of the letter at the time they signed it, but that he later told his wife. He also asserted that while he didn't remember telling his wife to keep the matter confidential, she did remember his saying so.

¶22. Asked if he had any malice or ill will toward Robbins personally, and to describe his state of mind at the time he filed the Bar complaint, the civil suit, and spoke with the newspaper reporter, Roussel stated:

> My state of mind was that I was a person living in the United States of America where we are supposed to have the best legal system although we were reminded before we started this case that it was not perfect, but we are supposed to have the best legal system of any place in the world; and I felt like I had been wronged by Mr. Robbins being untruthful in my opinion with the Court; and since this was the only zoning case that I had ever lost over there, I said, "I lost the one that I lost or I had to lose because the Court was deceived." I was really at a low point. I have no animosity towards Mr. Robbins...

> I've been around lawyers enough to know that they are supposed to vigorously defend the cause, but I think that my feeling was that Mr. Robbins had overstepped this. I don't have any hard feelings toward him, but I do wonder about our system that would let something like that happen...

Roussel further stated that he had filed the civil suit against Robbins to redress wrongs "in good faith...because I thought I had a good lawsuit." Moreover, Roussel stated, his lawyer had told him that he had a good case. Questioned as to the basis for his demand of $600,000 damages, Roussel stated that while originally, he had not been interested in money, litigation became expensive.

¶23. At the close of testimony, the trial judge decided to "bifurcate" the proceedings - that is, hold a separate trial on the amount of punitive damages after the jury returned a verdict on actual damages. After closing arguments on the issue of actual damages, the jury deliberated for one hour and twenty-five minutes. They returned with a 10-2 verdict for Robbins, awarding $150,000 in damages. After testimony and closing arguments on the issue of punitive damages, the jury deliberated for fifteen minutes and returned with an 11-1 verdict for Roussel.

¶24. Roussel's motion for JNOV, new trial, or remittitur was denied on October 12, 1990. Roussel appealed this judgment on October 29, 1990.

**III.**

**DISCUSSION OF ISSUES**

**I. THE JURY VERDICT AGAINST ROUSSEL SHOULD BE REVERSED AND RENDERED: OR IN THE ALTERNATIVE, REVERSED AND REMANDED**

**A. AS A MATTER OF LAW, JUDGMENT SHOULD BE ENTERED FOR ROUSSEL ON THE MALICIOUS PROSECUTION CLAIM**

**1. BECAUSE ROUSSEL HAD ABSOLUTE IMMUNITY, THE MALICIOUS PROSECUTION CLAIM SHOULD HAVE BEEN DISMISSED.**

¶25. Roussel contends that Robbins' claim for malicious prosecution arising from the bar complaint was barred by an absolute immunity under Miss. Code Ann. §73-3-345 (Supp. 1992). The statute reads in part:

**Immunity from civil suit predicated on disciplinary proceedings.**

All complaints filed pursuant hereto shall be absolutely privileged, and no lawsuit predicated thereon may be instituted, and each person, firm, association or legal entity filing such a complaint shall be immune from any civil suit predicated thereon....(e)very person shall be immune from civil suit for all of his sworn or written statements made or given in the course of any investigation, investigatory hearing, formal hearing or review proceedings held and conducted under these disciplinary rules.

¶26. Robbins argues that Disciplinary Rule 14(b), pursuant to which he was granted leave by this Court to file a malicious prosecution claim against Roussel, takes precedence over the statute; therefore, he was entitled as a matter of law to recover damages. Rule 14 (a) is identical to §73-3-345 above. Rule 14 (b) provides in part:

In an action separate and distinct from the disciplinary proceedings, the attorney may, by petition filed with the Clerk of the Court, seek a finding by the Court or its special master on

the issue of malicious prosecution or abuse of process or malicious publication to persons not authorized to receive information pertaining to matters arising under these rules. If the Court finds or approves a finding by a special master that there appears to or may have been malicious prosecution, abuse of process, or malicious circulation to parties or persons not entitled to receive information pertaining to matters arising under these rules, the Court shall enter its order granting the right to sue, notwithstanding the immunity provided above. Such finding and right to sue shall constitute only a right to commence an action, not an adjudication as to whether or not there was, in fact, a waiver of the immunity provided above, and not a finding upon the merits of any action which the attorney may thereafter institute...

In other words, under the statute, civil claims may not be brought based on bar disciplinary proceedings, whereas under the Rule, claims may be brought based on such proceedings if permission is granted by this Court.

¶27. Under the facts of this case, we need not address this apparent conflict between the statute and the Rule. The statute provides immunity "from civil suit predicated on disciplinary proceedings." That is, it provides that "no lawsuit predicated (on a bar complaint) may be instituted." Roussel contends that he is immune from Robbins' counterclaims under this statute. He is mistaken. Robbins' counterclaims were not "predicated on disciplinary proceedings," nor were they part of a lawsuit "instituted" on the basis of a bar complaint. Rather, Robbins' counterclaims were predicated on the claims made by Roussel in the suit he filed in the Rankin County Circuit Court. Had Robbins filed a suit against Roussel solely on the basis of Roussel's bar complaint, Roussel might have a valid claim to immunity under the statute. However, after the bar complaint was dismissed, Roussel chose to pursue his claims against Robbins in court. Roussel, not Robbins, instituted the suit, and such action brought Roussel outside the scope of immunity provided by § 73-3-345.

¶28. In its order dated January 25, 1990, this Court granted Robbins "the right to file a counterclaim in Cause No. 15,910 filed in the Circuit Court of Rankin County for malicious prosecution and malicious circulation...of confidential information pertaining to matters arising under the Rules of discipline." We hold that having initiated a lawsuit against Robbins in Circuit Court, Roussel enjoyed no immunity to such counterclaims. The trial judge properly allowed Robbins' counterclaims for malicious prosecution to go forward.

## 2. THE TRIAL COURT ERRED BY ALLOWING THE ISSUE OF PROBABLE CAUSE TO GO TO THE JURY

¶29. Roussel contends that the trial court erred in allowing the malicious prosecution claim to go to the jury. He argues that the facts were undisputed that Robbins made misleading statements, and that there was "no evidence...that (he) filed the complaint for any reason other than believing that Robbins had attempted to mislead the Court."

¶30. Robbins argues that he presented considerable evidence on the issue of probable cause, along with the other elements of malicious prosecution. He contends that the jury, not the judge, resolves questions of fact presented at trial, and therefore that the issue of probable cause was correctly sent to the jury.

¶31. The elements of the tort of malicious prosecution are:

(1) The institution of a proceeding

(2) by, or at the insistence of the defendant

(3) the termination of such proceedings in the plaintiff's favor

(4) malice in instituting the proceedings

(5) want of probable cause for the proceedings

(6) the suffering of injury or damage as a result of the prosecution.

*See **Benjamin v. Hooper Electronic Supply Co.**, 568 So. 2d 1182, 1188 (Miss. 1990); **Parker v. Game and Fish Comm'n.**, 555 So. 2d 725, 728 (Miss. 1989); **Royal Oil Co., Inc. v. Wells**, 500 So. 2d 439, 442 (Miss. 1986).*

¶32. Roussel's assignment of error concerns only the issue of probable cause, and whether it was correctly sent to the jury. On the question of whether the judge or the jury should determine the existence of probable cause, this Court has stated:

> When the facts are undisputed, it is the function of the court to determine whether probable cause existed. On the other hand, where the facts are in dispute, this Court has proclaimed that it becomes a jury question and it is for them to decide based on proper instructions.

*Benjamin*, 568 So. 2d at 1190 (citations omitted).

¶33. Roussel contends that "undisputed facts" support his contention that Robbins had attempted to mislead the court, and therefore probable cause existed as a matter of law. He also asserts that there is "no evidence" to support an inference that he filed the complaint for any reason other than to mislead the court.

¶34. This is an inaccurate depiction of the record, and/or a misunderstanding of the law of malicious prosecution. Robbins, naturally, disputes Roussel's contention that he attempted to mislead the Court with his Supplemental Abstract in the Allen appeal. Clearly, a question of fact exists as to whether Roussel had probable cause to bring suit. As stated above, the question of whether circumstances constitute probable cause is one for the jury.

¶35. In sum, the judge properly sent the question of probable cause, along with the other elements of malicious prosecution, to the jury.

### B. AS A MATTER OF LAW, JUDGMENT SHOULD BE ENTERED FOR ROUSSEL ON THE LIBEL CLAIM.

¶36. Roussel argues that the newspaper article describing his lawsuit against Robbins cannot serve as a basis for a libel or defamation claim because 1) his comments were true, and truth is a defense to a claim of defamation; 2) his comments were made in connection with judicial proceedings, and were therefore subject to immunity; 3) his comments were statements of opinion, which are not actionable for libel or defamation, and; 4) Robbins was a public figure, and therefore was required to prove that Roussel's statements were made with actual malice.

¶37. Robbins argues that the immunity Roussel enjoys for the complaint cannot be extended to cover his comments to the newspaper, and that he (Robbins) is not a public figure. Robbins also contends that the jury was properly instructed on the elements of defamation, and its findings should not be disturbed.

¶38. This Court has stated that in defamation actions, the threshold question is whether the published statements are false, for truth is a complete defense to an action for libel. *Blake v. Gannet Co., Inc.*, 529 So. 2d 595, 603 (Miss. 1988); *Fulton v. Mississippi Publishers Corp.,* 498 So. 2d 1215, 1217 (Miss. 1986).

¶39. The article upon which Robbins' claims for libel, slander, and emotional distress were based read in relevant part:

> In a Monday afternoon telephone interview, Roussel said that Robbins had allegedly changed the meaning of sentences included in the abstract of record, by eliminating certain words. "Because of that, I lost to the Supreme Court," Roussel said. "Even though my lawyer filed, saying that it was misleading, they (Supreme Court) let it stand. I feel like that I would have won."

Roussel contends that his statements merely described the contents of his lawsuit; that is, they were "a true statement about the content of a public record." Since true, he argues, the statements could not be defamatory.

¶40. The sentences of the paragraph are an expression of Roussel's opinion. Therefore, because these were opinions, Roussel defends Robbins' libel claims by relying upon what this Court stated in *Meridian Star, Inc. v. Williams*, 549 So. 2d 1332, 1335 (Miss. 1989), *citing* *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974):

> Expressions of opinions, however unreasonable or vituperative, cannot be the subject of a defamation suit...

> We have recognized the importance of the free expression of opinions and have held that when criticism and comment are in the form of opinion, the statement will be privileged and no action for defamation will lie...

¶41. Roussel's reliance upon *Meridian Star, Inc.* is misplaced as was this Court's reliance when *Meridian Star, Inc* was decided. Subsequent holdings and interpretations of *Gertz* by the United States Supreme Court clearly illustrate this incorrect interpretation.

¶42. In *Gertz*, it was stated by the United States Supreme Court that, "Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz*, 418 U.S. at 339. This Court took the above language from *Gertz* and used it in *Meridian Star, Inc.,* 549 So. 2d at 1335, to say that "Expressions of opinions, however unreasonable or vituperative, cannot be the subject of a defamation suit. Statements of opinion are entitled to absolute immunity from defamation suit under the first amendment to the United States Constitution. . . . . [T]hus, ideas and opinions, although incorrect or faulty in their premise, are protected by the United States

Constitution and cannot support a defamation action."

¶43. Shortly thereafter in 1990, the United States Supreme Court addressed the above mentioned *Gertz* language in *Milkovich v. Lorian Journal Co.,* 497 U.S. 1, 18-21 (1990). The *Milkovich* Court found that the *Gertz* language relied upon in *Meridian Star, Inc*., was mere *dictum*. Furthermore, the United States Supreme Court found that it never intended to create "still another First Amendment-based protection for defamatory statements which are categorized as 'opinion' as opposed to 'fact.'" *Milkovich*, 497 U.S. at 18. The *Milkovich* Court further stated that, "Thus, we do not think this passage from *Gertz* was intended to create a whole sale defamation exemption for anything that might be labeled 'opinion.'" *Id.* [(3)]

¶44. Milkovich's explanation of the nonexistent "opinion exception" has been interpreted and properly explained by *Keohane v. Wilkerson,* 859 P.2d 291 (Colo. 1993), aff'd, *Keohane v. Stewart,* 882 P.2d 1293 (Colo. 1994), and cert. denied, 115 S. Ct. 936 (1995). *Keohane* held that "Prior to *Milkovich,* statements of 'pure' opinion were recognized as having constitutional privilege and thus were not actionable for defamation in Colorado." *See Burns v. McGraw-Hill Broadcasting Co.,* 659 P. 2d 351 (Colo. 1983); *Bucher v. Roberts,* 595 P. 2d 239 (1979). "This privilege was premised on dictum in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805 (1974)." *Keohane*, 859 P.2d at 295. "However, in *Milkovich,* the Supreme Court rejected the constitutional distinction between opinion and fact." *Id.* "Thus, after *Milkovich*, whether a statement is characterized as a 'fact' or 'opinion' is no longer a relevant inquiry in determining whether it may be constitutionally privileged. Rather, the relevant inquiry is whether the statement could be reasonably understood as declaring or implying a provable assertion of fact." *Keohane,* 859 P.2d at 296. "A statement, even if phrased as an opinion, will not enjoy constitutional protection if the court concludes that its substance or gist could reasonably be interpreted as declaring or implying an assertion of fact." *Id.,* at 297.

¶45. In light of the unambiguous explanation of libel law by the United States Supreme Court, our nation's final and highest court, this Court is left with no alternative but to overrule and vacate *Meridian Star, Inc.* and any cases relying thereon and *Gertz.* Therefore, Roussel's reliance upon *Meridian Star, Inc*. is incorrect. Accordingly, Roussel was not entitled to judgment as a matter of law on the libel claim.

### C. A NEW TRIAL SHOULD BE GRANTED IN THIS CASE

¶46. Roussel argues that the judge erroneously permitted the jury to hear prejudicial and inflammatory evidence concerning the allegations, motives, and amount demanded in his original complaint. Roussel contends that he is entitled to a new trial for this reason.

¶47. Robbins argues that there was no abuse of discretion in the denial of Roussel's motion for a new trial, and that the evidence at trial - testimony as to Robbins' personal and professional difficulties after the filing of the bar complaint - fully supports the jury's verdict and the amount awarded.

¶48. This Court has held that a new trial may be granted when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion and prejudice. *Kitchens v. Miss. Ins. Guar. Ass'n.,* 560 So. 2d 129, 132 (Miss. 1989); *Motorola Com. &*

*Electronics v. Wilkerson*, 555 So. 2d 713, 723 (Miss. 1989). This Court will reverse a trial judge's denial of a request for a new trial only when such denial amount to an abuse of that judge's discretion. *Kitchens*, 560 So. 2d at 132. *See also C.&C. Trucking Co. v. Smith*, 612 So. 2d 1092, 1099 (Miss. 1992); *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992).

¶49. In this case, the jury heard several days' testimony concerning the alleged basis of the bar complaint, and the bar complaint itself. They had ample basis on which to determine whether Robbins had proven the necessary elements of malicious prosecution and other charges. Robbins, his wife, and a treating psychiatrist testified concerning Robbins' mental and emotional health after initiation of the bar complaint. They spoke of depression and rekindled post-traumatic stress disorder, which produced appetite disorders, nightmares and other symptoms. Robbins testified that his law practice suffered and he was compelled to dismiss his staff.

¶50. It does not appear that the jury's verdict for Robbins was against the overwhelming weight of such evidence. Roussel has not alleged, nor is there any indication that the jury was improperly instructed on the elements of malicious prosecution or other issues. The question of whether the verdict for Robbins was the result of bias, prejudice, or passion may be answered in two parts. First, there is the finding for Robbins, as distinguished from the amount of the award. As stated above, there is no indication that the jury's decision in Robbins' favor was the result of bias. As to the amount of the damages, this question will be addressed in the section below on remittitur.

¶51. In sum, there was no abuse of discretion by the judge in denying Roussel's motion for a new trial.

### D. ALTERNATIVELY, THE COURT SHOULD ORDER A NEW TRIAL AS TO DAMAGES AND A REMITTITUR

¶52. Roussel alternatively argues that the jury's verdict of $150,000 is excessive, and that he is entitled to a new trial as to damages only. Roussel contends that Robbins presented no evidence of lost earnings, and evidence of only $200.00 in medical bills.

¶53. Robbins argues that damage awards should be overturned as excessive only where they "shock the conscience," and that his does not. He submits that the evidence of his emotional and professional difficulties supports the jury's award. He suggests that the award is further justified because he will continue to suffer anguish and emotional distress.

¶54. This Court's scope of review in reviewing an award of damages was stated in a malicious prosecution case:

> Our general rule is that a damage award may be altered or amended only when it is so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience. We are not authorized to disturb a jury verdict regarding amount of damages because it "seems too high" or "seems too low." Motions challenging the quantum of damages and seeking a remittitur are by their very nature committed to the sound discretion of the trial judge. Where the trial judge acts upon these matters, we reverse only if he has abused or exceeded his discretion.

*C.& C. Trucking Co. v. Smith*, 612 So. 2d 1092, 1106. *See also Jesco, Inc. v. Shannon*, 451 So. 2d 694, 705 (Miss. 1984).

¶55. Robbins counterclaimed against Roussel for malicious prosecution, intentional infliction of emotional distress, libel and slander. Evidence was presented regarding loss of earnings and emotional distress. The jury did not characterize the damages for the loss of earnings specifically, but returned a general verdict.

¶56. Rule 49 of the Mississippi Rules of Civil Procedure provides for general verdicts and special verdicts:

> (a) General Verdicts. Except as otherwise provided in this rule, jury determination shall be by general verdict. The remaining provisions of this rule should not be applied in simple cases where the general verdict will serve the ends of justice.

> (b) Special Verdict. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact . . .

**¶57.** From the general verdict, it is not apparent which claim(s) the award is based upon. It was the damages that occurred from any or all of the causes Robbins set forth in his complaint that entitled him to the award, not only the loss of earnings as suggested by Roussel.

¶58. The damages awarded are not so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience. Therefore, the trial judge has not abused or exceeded his discretion. The jury award of damages is affirmed.

### II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON ROUSSEL'S COMPLAINT.

¶59. Roussel contends that the trial court "failed to address the question of the false and misleading supplemental abstract filed by Robbins in the Supreme Court." Roussel argues that Robbins committed an intentional tort - "the use of a falsehood to persuade the court to decide against Roussel," and that it is a question of fact for the jury whether Robbins' intentional use of false statements injured Roussel. Roussel further argues that Robbins had a duty to Roussel under Miss. Code Ann. § 73-3-37 (1972), which commands lawyers "never to seek to mislead by any artifice or false statement of the law."

¶60. Robbins argues that in his appeal of the Allen litigation, Roussel never raised any issue of impropriety by Robbins, and therefore, Roussel is barred by the doctrines of collateral estoppel and res judicata from making any such allegation now. Robbins also argues that the one year statute of limitations for intentional torts bars Roussel's complaint as a matter of law. Robbins finally argues that the trial court correctly found that Roussel had no standing to seek redress for Robbins' alleged misconduct.[(4)]

¶61. This Court employs a *de novo* standard in reviewing a grant of summary judgment. *Owen v. Pringle*, 621 So. 2d 668 (Miss. 1993); *Pace v. Financial Sec. Life of Miss.,* 608 So. 2d 1135, 1138 (Miss. 1992). A trial court may grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* M.R.C.P. 56; *Morgan v. City of Ruleville,* 627 So. 2d 275 (Miss. 1993); *Drummond v. Buckley,* 627 So. 2d 264 (Miss. 1993); *Owen, supra*.

¶62. It appears that Robbins was entitled to judgment as a matter of law, for the following reason: the actions of Robbins which Roussel claimed to have harmed him do not conform to any tort actionable in this state's courts. There is no such tort as "the use of a falsehood to persuade the court to decide against (a party)." Moreover, Robbins had no duty to Roussel which could give rise to Roussel's recovery under a tort theory. In short, Roussel's allegations failed to make a claim upon which relief could be granted. That is, Roussel's claim could not even pass the test for a 12(b)(6) motion to dismiss, let alone a motion for summary judgment.

¶63. The trial court correctly granted summary judgment for Robbins.

## IV.

## CONCLUSION

¶64. Roussel was not entitled to immunity from Robbins' counterclaims for malicious prosecution. The immunity provided by Miss. Code Ann. § 73-3-345 (1972) applies to lawsuits "predicated" on bar complaints; Robbins' counterclaims were predicated on the claims filed by Roussel in the Rankin County Circuit Court. Therefore, the judge correctly allowed the malicious prosecution claims to go forward.

¶65. The question of probable cause was properly sent to the jury, because the facts as to whether Robbins attempted to mislead the court were in dispute. The Rankin County News article was defamatory, and even though it contained truthful statements as to the contents of Roussel's lawsuit, the quotations which were Roussel's opinion are not protected. . Although truth is a defense to a defamation claim, expressions of opinion can be the subject of a defamation case. Therefore, Roussel was not entitled to judgment as a matter of law on the libel claim. *Milkovich v. Lorian Journal Co.,* 497 U.S. 1, 18-21 (1990).

¶66. The jury's verdict in favor of Robbins was not against the overwhelming weight of the evidence; therefore, the judge's denial of Roussel's motion for a new trial was not in error. Upon review, the sum awarded as actual damages ($150,000) does not evince passion, bias or prejudice on the part of the jury so as to shock the conscience. The damages award is affirmed.

¶67. The trial court correctly granted summary judgment against Roussel, because the allegations in his complaint failed to cite a known tort. Robbins was entitled to judgment as a matter of law.[(5)]

**¶68. JUDGMENT IS AFFIRMED.**

**SULLIVAN, P.J., PITTMAN, BANKS, McRAE AND MILLS, JJ., CONCUR. LEE, C.J., PRATHER, P.J., AND SMITH, J., NOT PARTICIPATING.**

## APPENDIX

1. Statement in Abstract:

In the instant case the jump from R-1 to C-2 is not a substantial change.

Record at 17:

> Q. But following an R-1, you do have an R-2, an R-3. Then you have -- before we get to the C-2 that Mr. Allen is seeking, you do have a C-1; do you not?
>
> A. Right.
>
> Q. So you're making a pretty big jump, there, aren't you?
>
> A. Yes.
>
> Q. So, this is a very substantial change, isn't it?
>
> A. A change from --
>
> Q. Substantial change in the zoning classification of that property.
>
> A. From R-1 to --
>
> Q. To a C-2.
>
> A. I would say so, in most instances, but in the case here, we have an existing C-2 contiguous to the subject property.

2. Statement in Abstract:

There is a need for this neighborhood-type use.

Record at 24:

> Q. Now, right now there is no real need for any additional commercially zoned property within that area, but for Mr. Allen wanting to utilize his property for commercial uses and purposes.
>
> A. Well, as I said, I'm not sure about the need out there. The City of Brandon is a growing - a growing city and new development all the time and new homes being constructed, and as these new people come in and new homes, there is a need for - this neighborhood-type commercial use -
>
> Q. (...) is there a community need for any additional commercially zoned property within that area?
>
> A. I don't think I know the answer to that question. I think it - it would be up to the - as I said, up to the developers - the people who are going to invest the money in the commercial

business.

3. Statement in Abstract:

There would be water and sewerage service for the subject property.

Record at 40:

Q. What would be the water and sewerage service for the proposed area before this Board tonight?

A. The subject property, as it appears on this map, is in the certificated area for the utility company.

*** 

Q. Mr. Baker, to your knowledge, is there a sanitary sewer line serving the subject property?

A. I don't know, Mr. Rimmer.

4. Statement in Abstract:

There is a public need for the meat market.

Record at 65:

Q. Mr. Gray, are you prepared to give any testimony whatsoever as to whether or not there is a public need for this type of facility in that area?

A. Yes, sir, I'd like to go there and buy steaks, because I don't go to Mr. Roussel's steak place anymore.

Q. That's not public need; that's just your own personal opinion.

A. I'm part of the public, yes, sir.

5. Statement in Abstract:

The only inquiries I have had to sell have been for commercial use.

Record at 66-67:

Q. I'd like to ask Mr. Gray, since he owns the property now adjoining that, which is a fairly large area, if he feels like this subject property of any of this other property could feasibly be developed into a residential subdivision?

A. Well, there's been two or three inquiries - did you say residential or -

Q. Residential. Do you feel like you could feasibly develop this and build houses where this piece of property is located and the adjoining area that you own?

A. The land that I got completely circled it? No, sir, because it's a dirt pit, and nobody wants to build in a dirt pit.

Q. In response to the Alderman's question, have you had any inquiries from anybody recently to purchase that property?

A. Two or three for commercial use, yes, sir.

Q. Nobody has contacted you about utilizing that property for a church?

A. A year or so ago - about a year and a half ago.

1. Brandon ordinance 331 states that applications for rezoning shall not be accepted until the expiration of two (2) years from the date of the decision o f the Board denying said application.

The denial of Allen's zoning application on May 5, 1981, eighteen months prior, had been based on this rule - that is, that two years had not passed since a prior application. In other words, the May 5, 1981, denial had not been on the merits of the rezoning application.

2. Roussel also demanded that Robbins "(r)eturn the parcel in question to Single Family Residential zoning (R-1)."

3. The United States Supreme Court also noted that the lower courts' reliance upon the *Gertz* language was a "mistaken reliance." *Milkovich*, 497 U.S. at 19. The Court further stated that freedoms of expression are still "adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and 'fact.'" *Id*.

4. Robbins calls Roussel's inclusion of an allegation of negligence in his complaint "a silly attempt to come within the scope of Mississippi's general limitation statute." Robbins correctly argues that Roussel has no legitimate claim for negligence against Robbins, since an attorney has no duty to an adverse party. Yet it is not clear that Roussel's action falls within the group of torts to which the one year statute of limitations applies. This is because it is unclear what, exactly, was Robbins' alleged tort.

5. We append a comparison of the statements from the Supplemental Abstract claimed by Roussel to be misleading or fraudulent, with the corresponding excerpts from the appeal record.